IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

WALTER LEE COLE,

     Plaintiff,                      No. CIV S-06-0336 GEB GGH P

     vs.

TOM CAREY, et al.,

     Defendants.               FINDINGS & RECOMMENDATIONS

_____/

I. Introduction

     Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff alleges that defendants Kofoed and Traquina provided inadequate medical care for an injury to his Achilles tendon.

     Pending before the court is defendants' summary judgment motion filed April 7, 2009. After carefully considering the record, the court recommends that defendants' motion be granted.

II. Summary Judgment Standards Under Rule 56

     Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322, 106 S. Ct. at 2552. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323, 106 S. Ct. at 2553.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11, 106 S. Ct. at 1356 n. 11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); T.W. Elec.

Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (citation omitted).

On March 16, 2007, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409, 411-12 (9th Cir. 1988).

III. <u>Legal Standard for Eighth Amendment Claim</u>

In order to state a § 1983 claim for violation of the Eighth Amendment based on inadequate medical care, plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." <u>Estelle v. Gamble</u>, 429 U.S. 97, 106, 97 S. Ct. 285, 292 (1976). To prevail, plaintiff must show both that his medical needs were objectively serious, and that defendants possessed a sufficiently culpable state of mind. <u>Wilson v. Seiter</u>, 501 U.S. 294, 299, 111 S. Ct. 2321, 2324 (1991); <u>McKinney v. Anderson</u>, 959 F.2d 853 (9th Cir. 1992) (on remand). The requisite state of mind for a medical claim is "deliberate indifference." <u>Hudson v. McMillian</u>, 503 U.S. 1, 4, 112 S. Ct. 995, 998 (1992).

A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Indications that a prisoner has a serious need for medical treatment are the following: the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain. <u>See</u>, <u>e.g.</u>, <u>Wood v. Housewright</u>, 900 F. 2d 1332, 1337-41 (9th Cir. 1990) (citing cases); <u>Hunt v. Dental Dept.</u>, 865 F.2d 198, 200-01 (9th Cir. 1989). <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1059-60 (9th Cir. 1992), <u>overruled</u> <u>on</u> <u>other</u> <u>grounds</u>, <u>WMX Technologies v. Miller</u>, 104 F.3d 1133 (9th Cir. 1997) (en banc).

In <u>Farmer v. Brennan</u>, 511 U.S. 825, 114 S. Ct. 1970 (1994) the Supreme Court defined a very strict standard which a plaintiff must meet in order to establish "deliberate indifference." Of course, negligence is insufficient. <u>Farmer</u>, 511 U.S. at 835, 114 S. Ct. at 1978. However, even civil recklessness (failure to act in the face of an unjustifiably high risk of harm which is so obvious that it should be known) is insufficient. <u>Id.</u> at 836-37, 114 S. Ct. at 1979. Neither is it sufficient that a reasonable person would have known of the risk or that a defendant should have known of the risk. <u>Id.</u> at 842, 114 S. Ct. at 1981.

\\\\\

It is nothing less than recklessness in the criminal sense – subjective standard – disregard of a risk of harm of which the actor is <u>actually</u> aware. <u>Id.</u> at 838-842, 114 S. Ct. at 1979-1981. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Id.</u> at 837, 114 S. Ct. at 1979. Thus, a defendant is liable if he knows that plaintiff faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." <u>Id.</u> at 847, 114 S. Ct. at 1984. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." <u>Id.</u> at 842, 114 S. Ct. at 1981. If the risk was obvious, the trier of fact may infer that a defendant knew of the risk. <u>Id.</u> at 840-42, 114 S. Ct. at 1981. However, obviousness <u>per se</u> will not impart knowledge as a matter of law.

Also significant to the analysis is the well established principle that mere differences of opinion concerning the appropriate treatment cannot be the basis of an Eighth Amendment violation. <u>Jackson v. McIntosh</u>, 90 F.3d 330 (9th Cir. 1996); <u>Franklin v. Oregon</u>, 662 F.2d 1337, 1344 (9th Cir. 1981).

Moreover, a physician need not fail to treat an inmate altogether in order to violate that inmate's Eighth Amendment rights. <u>Ortiz v. City of Imperial</u>, 884 F.2d 1312, 1314 (9th Cir. 1989). A failure to <u>competently</u> treat a serious medical condition, even if some treatment is prescribed, may constitute deliberate indifference in a particular case. <u>Id.</u>

Additionally, mere delay in medical treatment without more is insufficient to state a claim of deliberate medical indifference. <u>Shapley v. Nevada Bd. of State Prison Com'rs</u>, 766 F.2d 404, 408 (9th Cir. 1985). Although the delay in medical treatment must be harmful, there is no requirement that the delay cause "substantial" harm. <u>McGuckin</u>, 974 F.2d at 1060, citing <u>Wood v. Housewright</u>, 900 F.2d 1332, 1339-1340 (9th Cir. 1990) and <u>Hudson</u>, 112 S. Ct. at 998-1000. A finding that an inmate was seriously harmed by the defendant's action or inaction tends to provide additional support for a claim of deliberate indifference; however, it does not end the inquiry. <u>McGuckin</u>, 974 F.2d 1050, 1060 (9th Cir. 1992). In summary, "the more serious the

1  medical needs of the prisoner, and the more unwarranted the defendant's actions in light of those
2  needs, the more likely it is that a plaintiff has established deliberate indifference on the part of
3  the defendant." McGuckin, 974 F.2d at 1061.
4        Superimposed on these Eighth Amendment standards is the fact that in cases
5  involving complex medical issues where plaintiff contests the type of treatment he received,
6  expert opinion will almost always be necessary to establish the necessary level of deliberate
7  indifference. Hutchinson v. United States, 838 F.2d 390 (9th Cir. 1988). Thus, although there
8  may be subsidiary issues of fact in dispute, unless plaintiff can provide expert evidence that the
9  treatment he received equated with deliberate indifference thereby creating a material issue of
10 fact, summary judgment should be entered for defendants. The dispositive question on this
11 summary judgment motion is ultimately not what was the most appropriate course of treatment
12 for plaintiff, but whether the failure to timely give a certain type of treatment was, in essence,
13 criminally reckless.
14 IV.  Discussion
15       This action is proceeding on the third amended complaint filed January 17, 2007.
16 Plaintiff alleges that defendants provided inadequate medical care for an injury to his Achilles
17 tendon. The gravamen of this action is plaintiff's claim that defendants should have provided
18 surgery.
19       A.  Undisputed Facts
20       Plaintiff's opposition does not include a statement of undisputed fact addressing
21 defendants' statement of undisputed facts as required by Local Rule 56-260(b). However, after
22 reviewing plaintiff's opposition, it is fairly clear which of defendants' undisputed facts plaintiff
23 does not dispute.
24       Defendant Kofoed examined and treated plaintiff for pain in his right Achilles
25 tendon on March 29, 2005, and April 26, 2005. On March 29, 2005, defendant Kofoed
26 performed a "squeeze test" on plaintiff. The "squeeze test" is a simple clinical test used to

determine if the Achilles tendon is still intact by squeezing the calf muscles. If the foot moves during the test, it indicates that the tendon is attached. Plaintiff's test was positive for movement, indicating that the Achilles tendon was not severed.

Plaintiff had undergone an MRI of his right ankle on March 11, 2005, but the results were not available to defendant Kofoed on March 29, 2005. Defendant Kofoed ordered x-rays of plaintiff's right foot, ankle and knee, prescribed pain medication and scheduled him for a follow-up appointment.

On April 26, 2005, defendant Kofoed reviewed plaintiff's MRI. Defendant Kofoed told plaintiff that he did not have a ruptured Achilles tendon, but he did not have a partial tear, and that surgery was not an option at that time. At that time, plaintiff already had a cane and a lower bunk chrono. Defendant Kofoed recommended stretching and walking programs and prescribed an ankle sleeve to help immobilize the ankle and pain and anti-inflammatory medication.

Defendant Kofoed determined that surgery was not appropriate based on his opinion that a partial tear of the Achilles tendon is usually treated with conservative measures because the tendon needs time to heal. In defendant Kofoed's opinion, heel lifts, physical therapy, anti-inflammatory medication and immobilization are all appropriate treatments. In defendant Kofoed's opinion, surgery is usually not an option with a partial tear because surgery can cause more damage to the tendon and subjects the patient to the risk of infection. In defendant Kofoed's opinion, surgery is appropriate if there is a complete rupture of the Achilles tendon or if conservative measures are unsuccessful after about six months of treatment.

Dr. Thor, a staff physician, consulted with defendant Kofoed on May 26, 2005, regarding plaintiff's right Achilles tendon condition. Dr. Thor and defendant Kofoed agreed that plaintiff would not benefit from surgery because it could make the tear worse or lead to further disability.

\\\\\

Defendant Kofoed recommended that plaintiff undergo physical therapy for his Achilles tendon condition. Plaintiff underwent physical therapy in June, July and twice in August. The physical therapy did not help plaintiff's condition.

In May and July 2005, defendant Traquina provided the second level responses to plaintiff's administrative appeals requesting surgery for his Achilles tendon. In denying plaintiff's requests for surgery, defendant Traquina reviewed plaintiff's medical records and consulted with defendant Kofoed.

B. Discussion

*Serious Medical Need*

Defendants first move for summary judgment on grounds that plaintiff's injury to his Achilles tendon did not constitute a serious medical need. Defendants argue that plaintiff's condition was not life threatening and did not pose a substantial risk to his health. Defendants argue that plaintiff was able to walk with the assistance of a cane and took pain medication.

As stated above, a serious medical need is defined as follows:

> A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Indications that a prisoner has a serious need for medical treatment are the following: the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.

Plaintiff's torn Achilles tendon was a chronic injury, see defendants' summary judgment motion, Esquival declaration, exhibit B, p. 11, which caused plaintiff to suffer ongoing pain. Defendants as well as other doctors found this injury worthy of comment and treatment. For these reasons, the court finds that plaintiff's partially torn Achilles tendon constituted a serious medical need. Defendants are not entitled to summary judgment on this ground.

*Defendant Kofoed*

Defendants next argue that defendant Kofoed is entitled to summary judgment because plaintiff's disagreement with his diagnosis and treatment does not amount to deliberate

8

indifference. As discussed above, mere differences of opinion concerning the appropriate treatment cannot be the basis of an Eighth Amendment violation. <u>Jackson v. McIntosh</u>, 90 F.3d 330 (9th Cir. 1996). In the instant case, while plaintiff alleges that defendant Kofoed should have ordered surgery when he examined him in March and April 2005, he has provided no expert evidence supporting such a claim. Defendants have provided expert evidence, by way of defendant Kofoed's declaration, that conservative treatment rather than surgery was warranted at that time. Because this evidence is undisputed, the court finds that defendant Kofoed did not act with deliberate indifference by ordering conservative treatment, rather than surgery, in March and April 2005.

In his opposition, plaintiff suggests that he should have received surgery when the conservative treatment was unsuccessful after six months. However, at his deposition plaintiff admitted that after the two examinations in March and April 2005 he did not request to be seen by defendant Kofoed again. Plaintiff's deposition, p. 24: 2-11. There is no evidence in the record that defendant Kofoed was aware that the conservative treatments had not worked after six months. For that reason, the court does not find that defendant Kofoed acted with deliberate indifference by failing to order the surgery after six months.

In his opposition, plaintiff also argues that the physical therapy ordered by defendant Kofoed was not sufficient. Plaintiff also suggests that the other conservative treatment ordered by defendant Kofoed was inadequate. However, plaintiff has provided no expert evidence supporting these claims. For this reason, the court does not find that defendant Kofoed acted with deliberate indifference by ordering conservative treatment, including approximately two months of physical therapy, for plaintiff.

For the reasons discussed above, defendant Kofoed should be granted summary judgment.

\\\\\

\\\\\

*Defendant Traquina*

Defendants argue that defendant Traquina is entitled to summary judgment because he did not act with deliberate indifference by denying plaintiff's administrative appeals requesting surgery. As discussed above, plaintiff has presented no expert evidence contradicting defendants' expert evidence that conservative treatment, rather than surgery, was the appropriate course of treatment for his condition. For this reason, defendant Traquina should be granted summary judgment.

Defendants also suggest that defendant Traquina should be granted summary judgment because plaintiff cannot state a colorable Eighth Amendment claim against him simply based on his denial of the administrative grievances. Defendants sued in their individual capacity must be alleged to have: personally participated in the alleged deprivation of constitutional rights; known of the violations and failed to act to prevent them; or implemented a policy that repudiates constitutional rights and was the moving force behind the alleged violations. Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991); Hansen v. Black, 885 F.2d 642 (9th Cir. 1989); Taylor v. List, 880 F.2d 1040 (9th Cir. 1989). "Although a § 1983 claim has been described as 'a species of tort liability,' Imbler v. Pachtman, 424 U.S. 409, 417, 96 S. Ct. 984, 988, 47 L.Ed.2d 128, it is perfectly clear that not every injury in which a state official has played some part is actionable under that statute." Martinez v. State of California, 444 U.S. 277, 285, 100 S. Ct. 553, 559 (1980). "Without proximate cause, there is no § 1983 liability." Van Ort v. Estate of Stanewich, 92 F.3d 831, 837 (9th Cir. 1996).

> The search, which was performed in accordance with this constitutionally valid strip search policy, was subsequently ratified by the School Board when Mr. Williams filed a grievance. Therefore, Williams' only grasp at evoking municipal liability under § 1983 is to show that this subsequent ratification is sufficient to establish the necessary causation requirements. Based on the facts, the Board believed Ellington and his colleagues were justified in conducting the search of Williams. There was no history that the policy had been repeatedly or even sporadically misapplied by school board officials in the past. Consequently, the School Board cannot be held liable for the ratification of the search in question, because this single, isolated decision can hardly constitute the "moving force" behind the alleged constitutional deprivation.

Williams v. Ellington, 936 F.2d 881, 884-885 (9th Cir. 1991).

        This court is unwilling to adopt a rule that anyone involved in adjudicating grievances after the fact is per se potentially liable under a ratification theory. However, this is not to say that persons involved in adjudicating administrative disputes, or persons to whom complaints are sometimes made, can never be liable under a ratification theory. If, for example, a reviewing official's rejections of administrative grievances can be construed as an automatic whitewash, which may have led other prison officials to have no concern of ever being reprimanded, a ratifying official may be liable for having put a defective policy in place.

        The issue before defendant Traquina in his review of plaintiff's grievances was whether plaintiff should have surgery. In other words, defendant Traquina did not conduct an "after the fact" review. Rather, his review concerned ongoing treatment. For these reasons, defendants' argument that defendant Traquina is entitled to summary judgment because his denial of the grievances was not sufficient involvement in the alleged deprivations is without merit.

*Qualified Immunity*

        Defendants argue that they are entitled to qualified immunity. In resolving a claim for qualified immunity the court addresses two questions: (1) whether the facts, when taken in the light most favorable to plaintiff, demonstrate that the officer's actions violated a constitutional right and (2) whether a reasonable officer could have believed that his conduct was lawful, in light of clearly established law and the information the officer possessed. Anderson v. Creighton, 483 U.S. 635, 107 S.Ct. 3034 (1987). Although the Supreme Court at one time mandated that lower courts consider these two questions in the order just presented, more recently the Supreme Court announced that it is within the lower courts' discretion to address these questions in the order that makes the most sense given the circumstances of the case. Pearson v. Callahan, --- U.S. ----, 129 S.Ct. 808, --- L.Ed.2d ----, 2009 WL 128768 (January 21, 2009).

1   Because the court finds that defendants are entitled to summary judgment as to the
2   merits of plaintiff's claims, it need not further address the issue of qualified immunity.
3   Accordingly, IT IS HEREBY RECOMMENDED that defendants' April 7, 2009,
4   summary judgment motion (no. 57) be granted.
5   These findings and recommendations are submitted to the United States District
6   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty
7   days after being served with these findings and recommendations, any party may file written
8   objections with the court and serve a copy on all parties.  Such a document should be captioned
9   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections
10  shall be served and filed within ten days after service of the objections.  The parties are advised
11  that failure to file objections within the specified time may waive the right to appeal the District
12  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: 08/24/09

/s/ Gregory G. Hollows
<u>                                    </u>
UNITED STATES MAGISTRATE JUDGE

cole336.sj